IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TONY LEWIS SHARPE, #206506,    )
    )
    Plaintiff,    )
    )
v.    )    CASE NO. 2:05-CV-471-ID
    )    [WO]
    )
OFFICER ATKINS, *et al.*,    )
    )
    Defendants.    )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Tony Lewis Sharpe ["Sharpe"], a state inmate, in which he presents claims against correctional officers Robert Atkins, Cedric Streeter and Sylvester Nettles; chaplain Stephen Walker; warden Louis Boyd; warden Arnold Holt; former correctional commissioner Donal Campbell; and governor Bob Riley. Specifically, Sharpe contends that on October 26, 2004, during his confinement at the Bullock County Correctional Facility ["Bullock"], defendants Walker, Atkins and Streeter acted with deliberate indifference to his safety by failing to protect him from attack by another inmate. He also complains that the aforementioned attack and two previous assaults at the hands of other inmates resulted from the dangerous conditions of confinement in existence throughout the Alabama prison system. Sharpe seeks declaratory, injunctive and monetary relief for the alleged violations of his constitutional rights.

The defendants filed written reports, supporting evidentiary materials and responses

to discovery addressing Sharpe's claims for relief.  Pursuant to the orders entered herein, the court deems it appropriate to treat the defendants' written reports as a motion for summary judgment.  *Order of July 18, 2005 - Court Doc. No. 18*; *Order of March 28, 2006 - Court Doc. No. 41*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007) (per curiam); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

2

(citation to rule omitted).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing  that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of a genuine issue of material fact.  Thus, the burden shifts to the plaintiff to establish, with evidence beyond the pleadings, that a genuine issue material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Celotex*, 477 U.S. at 324 (non-movant must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"); Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 549 U.S. 521, ---, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006).

Consequently, to survive the defendants' properly supported motion for summary judgment, Sharpe is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of various constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported

by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").   "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not

5

lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at ---, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Sharpe fails to demonstrate a genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## II.  FACTS[1]

Sometime in early October of 2004, Anthony Hicks, a state inmate confined at Bullock in the honor dorm with Sharpe, verbally threatened Sharpe.[2]  Sharpe reported this threat to an unknown shift officer who undertook an investigation of the matter.  The officer interviewed Hicks and two other inmates regarding the alleged threat.  Hicks denied threatening Sharpe and the two inmate witnesses stated that they had no knowledge of any threat made by Hicks against Sharpe.  Approximately one week later, Hicks again allegedly threatened Sharpe.  At this time, Sharpe informed Chaplain Stephen Walker, admissions director for the honor dorm, of the threat.  Defendant Walker concedes that Sharpe advised him of a threat by Hicks about dorm noise and the television but "Sharpe did not tell me the extent of the threat [or] the harm allegedly intended."  *Defendants' Exhibit D (Affidavit of Stephen O. Walker) - Court Doc. No. 16-2* at 9.  Walker "questioned Hicks, separately from Sharpe," at which time "Hicks [asserted] he was having some trouble with Sharpe, some difficulty, words only, and he did not agree he had threatened to cause any harm to Sharpe.  My impression from these talks was that there was no threat to Sharpe, but that Sharpe had been needling Hicks with words... .  Sharpe is a manipulator [who had

---

[1]The facts are gleaned from the complaint, as amended, the incident report complied on the October 26, 2004 honor dorm incidents, the defendants' evidentiary materials and the responses filed by the plaintiff.

[2]The honor dorm houses inmates with clear disciplinary records and no segregation confinement for at least ninety (90) days prior to placement in the dorm.  *Administrative Regulation No. 460* at ¶ V.  While housed in this dorm, inmates are provided access to programs designed to aid in developing life skills and positive personal growth.  *Id*. at ¶ III.

previously been expelled from the honor dorm for harassing other inmates].  My thought was that the next step was for Sharpe and Hicks to take their problem to the dorm council.  Hicks was ready to do that.  I heard nothing more of this, before the fight they later had." *Id.*

On October 26, 2004 at approximately 4:45 p.m., Hicks verbally accosted Sharpe in the living area of the honor dorm and Sharpe "immediately got up and left the area, going to the back of the dorm ... to go on duty as a T.V. monitor...." *Plaintiff's Complaint - Court Doc. No. 1* at 4.  Sharpe did not report this alleged threat to any correctional official.  Sharpe completed his duty as television monitor and returned to his assigned living area.  Hicks approached Sharpe around 7:15p.m., snatched a book from his hands, threatened Sharpe and threw the book in Sharpe's face.  Sharpe attempted to leave his rack area but Hicks blocked Sharpe's exit and continued his verbal attack.   When Sharpe did not respond, Hicks exited the area.  Sharpe sat on his bed and began to put on his shoes.  At this time, Hicks returned, kicked Sharpe on the side of the head, pulled him from the bed and assaulted him.   Other inmates separated Hicks and Sharpe.   Sharpe proceeded to the hallway adjacent to the cubicle area of the dorm and informed the cubicle officer, Cedric Streeter, of Hicks' actions.

Defendant Atkins arrived at approximately 7:30 p.m. and Sharpe advised him of the aforementioned attack by Hicks.  Atkins undertook measures to locate Hicks.  Sharpe then

attempted to exit the hallway and defendant Streeter ordered that he not do so.[3]  Atkins, with information provided by inmate Phillip Webster, located Hicks and escorted Hicks to the hallway area occupied by Sharpe so that he could discuss the incident with both inmates.   At this time, Atkins observed a physical altercation between two inmates occurring among a group of inmates amassed toward the front of the dorm and instantly responded to this altercation.[4]  Upon observing the assemblage of inmates and altercation at the front of the dorm, Streeter summoned other correctional officers to aid in securing the area.  *Defendants' Exhibit C (Affidavit of Cedric Streeter) - Court Doc. No. 16-2* at 7. When Atkins approached the inmates involved in the altercation, "the crowd dispersed and the altercation stopped."  *Defendants' Exhibit E (Institutional Incident Report BCCF: 04-2438) - Court Doc. No. 16-2* at 18.   After quelling this altercation, "Atkins heard yelling in the hallway on the opposite side of" the cubicle.  *Id*.  Hicks had physically assaulted Sharpe, causing Sharpe "to yell for help....  After [kicking Sharpe in the face and head] Hicks turned to walk away as several officer[s] ran up to assist [Sharpe], and two more [officers] began to place Hicks in handcuffs."  *Plaintiff's Complaint - Court Doc. No. 1* at

---

[3]The cubicle officer monitors four dorms from a centrally located and secure cubicle.  From the cubicle, all areas of the dorms for which the officer is responsible are visible.  The cubicle officer has the ability to close the dorms electronically and call for assistance from other officers when this is necessary to maintain or restore security.  For security reasons, the officer is not allowed to exit the cubicle.

[4]The investigation by correctional officials revealed that a group of inmates from dorm 23 entered dorm 22, at which time "inmate [Willie] Gosha assaulted inmate Phillip Webster because inmate Webster had pointed out inmate Hicks to Officer Atkins as the one who had assaulted inmate Sharpe."  *Defendants' Exhibit E (Institutional Incident Report BCCF: 04-2438) - Court Doc. No. 16-2* at 19.  During this investigation, Sharpe acknowledged "that something started to occur in Dorm #22 and that Officer Atkins had to go in the dorm."  *Id*.

5.  In response to the yelling, Atkins returned to the cubicle area.

## III.  DISCUSSION

Sharpe alleges that Atkins and Streeter failed to protect him from the attack by Hicks that occurred in the hallway outside of cubicle number 4.  *Plaintiff's Memorandum in Support of Complaint - Court Doc. No. 2* at 1-2.  Sharpe further argues that defendants Walker, Nettles, Boyd, Holt, Campbell and Riley enacted policies which created overcrowded conditions with insufficient security and these conditions "placed [him] in a position to be assaulted and failed to stop [the] assaults" suffered during his confinement in the state prison system.  *Plaintiff's Complaint - Court Doc. No. 1* at 3.  In relation to this claim, Sharpe asserts that the "policies regarding inmate-on-inmate violence directly lead to the assaults...."  *Plaintiff's Memorandum in Support of Complaint - Court Doc. No. 2* at 3.  Sharpe maintains that defendants Holt and Boyd should have known he would be assaulted at Bullock because he is "a sex offender, White, and of small stature ..." and had on two previous occasions been the victim of assaults at other correctional facilities.  *Id.*

The defendants deny they acted with deliberate indifference to Sharpe's safety. Specifically, defendants Streeter and Atkins maintain that at the time of the challenged hallway attack by Hicks they had undertaken reasonable measures to maintain security in the dorm.  The remaining defendants argue that neither overcrowding, understaffing nor any prison  policy caused any assault on Sharpe.  They further argue the mere fact Sharpe "is a sexual offender and of small stature" does not in and of itself establish a substantial

risk of serious harm. *Defendants' Exhibit B (Affidavit of Louis Boyd) - Court Doc. No. 16-2* at 5. The defendants also assert there is no evidence before the court which demonstrates that they were subjectively aware of any such risk.

### A.   Official Capacity Claims and Eleventh Amendment Immunity

To the extent that Sharpe sues each of the defendants in their official capacity, the defendants argue they are immune from suit in their official capacities pursuant to the Eleventh Amendment.[5] Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, [59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Powell v. Barrett*, 496 F.3d 1288, 1304, 1308 (11th Cir. 2007) (state defendants sued in their official capacity for monetary

---

[5]Eleventh Amendment immunity does not foreclose suits for injunctive and/or declaratory relief; rather, if applicable, it forecloses suits for compensable damage awards.

damages are immune from suit under the Eleventh Amendment).

In light of the foregoing, it is clear that the defendants are state officials entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Individual Capacity Claims - Failure to Protect

Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the objective elements,  an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh*, 268 F.3d 1028-1029.  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference....   The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  ... ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***." *Farmer*, 511 U.S. at 837-838 (emphasis added).  "Proof that the defendant should have perceived the risk, but did not, is insufficient."  *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer*, 511 U.S. at 838) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety....  It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312,

319 (1986) (emphasis added).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted); *Rich v. Bruce*, 129 F.3d 336, 339-340 (4th Cir. 1997) (unless a prison official actually makes the inference that a substantial risk of serious harm exists, he does not act with deliberate indifference even though his actions violate prison regulations or can be described as stupid and lazy).  As the foregoing makes clear, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983...." *Brown*, 894 F.2d at 1537.  Thus, in order to survive summary judgment on his deliberate indifference claims, Sharpe is required to produce sufficient evidence demonstrating (1) an objectively substantial risk of serious harm; (2) subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries. *Farmer*, 511 U.S. at 837-838; *Marsh*, 268 F.3d 1028-1029; *Hale v. Tallapoosa*

14

*County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

1. **Attacks in the Honor Dorm.**   Sharpe maintains defendant Walker failed to protect him from the attacks by Hicks which occurred on October 26, 2004.  *Plaintiff's Memorandum in Support of Complaint - Court Doc. No. 2* at 2.  Walker asserts that Sharpe advised him "Hicks threatened [Sharpe] about dorm noise and [the honor dorm] television. Sharpe did not tell me the extent of the threat [or] the harm allegedly intended." *Defendants' Exhibit D (Affidavit of Stephen O. Walker) - Court Doc. No. 16-2* at 9.  Walker conducted an investigation of Sharpe's complaint which included questioning Hicks, a member of the honor dorm's Executive Council.  Hicks acknowledged that "he was having some trouble with Sharpe, some difficulty, words only, and he did not agree he had threatened to cause any harm to Sharpe.  My impression from these talks was that there was no threat to Sharpe, but that Sharpe had been needling Hicks with words."  *Id*.  Walker believed Hicks' version of events because Walker believed that "Sharpe is one who would use his mouth to aggravate another person....  Sharpe is a manipulator.  My thought was that ... Sharpe and Hicks [should] take their problem to the dorm council [for resolution]. Hicks was ready to do that.  I heard nothing more of this, before the fight they later had." *Id.*

The record contains no evidence that the incidents with Hicks occurred due to any deliberate indifference or reckless disregard by defendant Walker to Sharpe's safety. Specifically, the evidentiary materials filed herein demonstrate that Walker was not

subjectively aware that a substantial risk of serious harm to Sharpe existed, as Walker did not draw such an inference from the facts available to him.  After investigating Sharpe's allegation regarding a general and unparticularized threat from Hicks, Walker determined that Hicks posed no actual threat of harm to Sharpe.  *Defendants' Exhibit D (Affidavit of Stephen O. Walker) - Court Doc. No. 16-2* at 9.  Sharpe made no further complaints to Walker.  Under the circumstances of this case, "to find [Walker] sufficiently culpable would unduly reduce awareness to a more objective standard, rather than the required subjective standard set by the Supreme Court."  *Carter*, 352 F.3d at 1350.  Sharpe has therefore failed to establish the requisite element of subjective awareness on the part of defendant Walker.  Consequently, Walker is entitled to summary judgment on this claim.

    **2.  <u>Hallway Attack by Inmate Hicks.</u>**  Sharpe complains that defendants Streeter and Atkins failed to protect him from the attack by inmate Hicks which occurred in the hallway outside the cubicle of the honor dorm.  However, the record contains no evidence indicating defendants Streeter and Atkins were aware of facts establishing an objectively substantial risk of serious harm to Sharpe.  Moreover, there is nothing before the court which shows that these defendants acted with callous disregard for Sharpe's safety.  It is undisputed that prior to the hallway attack, defendants Streeter and Atkins knew only that Sharpe had accused Hicks of assaulting him earlier in the day.  Sharpe argues that his accusation should have apprised the defendants of a substantial risk of serious harm.  However, this accusation, unsubstantiated at the time of the challenged attack, "does not

provide a sufficient basis to make the inferential leap that a substantial risk of serious harm to Plaintiff existed." *Carter*, 352 F.3d at 1350.  The record before this court likewise does not demonstrate that upon hearing Sharpe's accusation defendants Streeter and Atkins drew the inference that a substantial risk of serious harm existed.  "Plaintiff has failed to establish that either Defendant had a subjective awareness of a substantial risk of serious physical threat to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim. When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...." *Id*.

Nevertheless, even assuming *arguendo* both an awareness of facts on the part of these defendants from which an inference could be drawn that a substantial risk of serious harm existed and their drawing the requisite inference, no Eighth Amendment violation occurred, as the response by the defendants was objectively reasonable under the totality of the circumstances present at the time of the challenged attack. *Chandler v. Crosby*, 379 F.3d 1278, 1290 (11th Cir. 2004), quoting *Farmer*, 511 U.S. at 844 (A defendant "may escape liability for known risks 'if [he] responded reasonably to the risk, even if the harm ultimately was not averted.'").  Upon being informed of an attack by Hicks on Sharpe, defendant Atkins began an investigation.  Atkins located Hicks and escorted him to the cubicle area so that he could interview both inmates regarding the alleged attack.  At this precise time, a fight broke out between other inmates in the front of the dorm.  Atkins reacted reasonably by proceeding to the area of the dorm in which the fight was transpiring.

Streeter, confined to the cubicle, called for assistance from additional correctional officers. Hicks took this opportunity to attack Sharpe again.  As soon as Atkins had quelled the disturbance at hand, he returned to the cubicle area.  The evidentiary materials establish that approximately three minutes elapsed from the time that Sharpe initially advised Atkins of Hicks' attack until the time that Atkins had the entire situation, including the fight in the front of the dorm, under control.  *Defendants' Exhibit E (Institutional Incident Report BCCF: 04-2438) - Court Doc. No. 16-2* at 18.  This, in itself, "is testimony to the efficiency of the guards' actions."  *Hopkins v. Britton*, 742 F.2d 1308, 1310 (11th Cir. 1984).

"[P]rison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the 'obligation to take reasonable measures to guarantee the safety of the inmates themselves.'"  *Whitley*, 475 U.S. at 320 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984).  In *Whitley*, the Court expanded the deliberate indifference standard to "adequately capture the importance of such competing obligations" and "convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance."  *Id.*; *Purcell ex rel. Estate of Morgan v. Toombs County, Georgia*, 400 F.3d 1313, 1320 (11th Cir. 2005) (This court can "not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment.").  Thus, penological interests are relevant factors in determining whether the response of correctional officials was objectively reasonable.

18

When the "ever-present potential for violent confrontation and conflagration," *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977), ripens into ***actual*** unrest and conflict, the admonition that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators," *Rhodes v. Chapman, supra,* 452 U.S., at 349, n. 14, 101 S.Ct., at 2400, n. 14, carries special weight. "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S., at 547, 99 S.Ct., at 1878. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.... Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness [by the defendant] under the [outlined deliberate indifference] standard ..., the case should not go to the jury.

*Whitley*, 475 U.S. at 321-322 (emphasis in original).

The circumstances present in the honor dorm at the time of the actions about which Sharpe complains dictated the responses undertaken by defendants Streeter and Atkins. It is clear that the defendants did not act with obduracy or wantonness in their efforts to restore order during a tumultuous situation. Their responses are therefore due deference and are not subject to second-guessing by this court. *Whitley*, 475 U.S. at 321-322. Consequently, under the facts of this case, the court concludes that defendants Streeter and Atkins responded in an objectively reasonable manner and did not act with deliberate indifference to Sharpe's safety. Summary judgment is therefore due to be granted in favor of defendants Streeter and Atkins on this claim.

3. **Policies and General Conditions.**  Sharpe alleges defendants Walker, Nettles, Boyd, Holt, Campbell and Riley violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to ensure his physical safety in an environment of overcrowding and understaffing which provided opportunities for Hicks and other inmates to attack him.  Sharpe further complains that the aforementioned defendants have failed to enact policies to heighten protection of inmates from inmate-on-inmate violence.  Finally, Sharpe argues that the defendants should have known he would be attacked while in prison because of the increase of inmate-on-inmate assaults through the years and due to his being small in stature, Caucasian, and a convicted sexual offender.

In response to these claims, the defendants maintain that neither the attacks by Hicks nor the previous two attacks on Sharpe resulted from overcrowding or a lack of sufficient staffing.  With respect to the attacks by Hicks, the defendants assert that these were isolated incidents which occurred when Hicks acted out of frustration because "Sharpe had been picking on ... him [for a long time] and that he had taken as much of it (taunting) as he could." *Defendants' Exhibit E (Institutional Incident Report BCCF: 04-2438) - Court Doc. No. 16-2* at 19.  The evidentiary materials indicate that both a cubicle officer and roving officer were on duty in the honor dorm at the time of the attacks by Hicks, thereby providing adequate security in the honor dorm at the time Hicks attacked Sharpe.  Although the defendants concede that the prison system is not at a full staffing level and that, at times, certain facilities house inmates beyond their design capacities, they argue that these

20

conditions did not cause the attacks on Sharpe.  The defendants also argue that inmates are

disciplined for assaults committed on other inmates and appropriate policies and procedures

exist regarding classification of violent and/or assaultive inmates.  The defendants further

contend the mere fact that prisoner assaults have increased over time does not provide

adequate notice of a particularized threat of serious harm to Sharpe.

> There is no general policy on inmate assaults; rather, it is a determination by the respective shift supervisor, whether or not inmate(s) need to be segregated because of the incident, as some assaults are less serious than others.  All assaults do result in disciplinary actions, which may range from loss of privileges and Good Time to Segregation, depending on recommendations of the Disciplinary Hearing Officer.   All incidents involving assaults are reported to the Investigation and Intelligence Division for investigation and possible referral [for criminal prosecution].
>
> Inmate Sharpe further alleges that [correctional officials] have no method of determining the risk of assault against inmates, nor do [officials] increase "surveillance" of inmates due to previous assaults or type of criminal convictions.
>
> According to the Department of Corrections Classification Manual ..., inmates who display assaultive behavior are considered for "close" custody (Segregation), as [are] those [inmates] who are sentenced to Life Without Parole, those who have three (3) disciplinaries for fighting within the last 12 months, and those who demonstrate a continued inability to live within the regulations of the institution.
>
> Bullock Correctional Facility is a Treatment Facility, housing inmates for such programs as Substance Abuse, Mental Health Education, and until recently, a Sex Offenders Program.  Bullock still houses approximately 300-400 sex offenders.  These facts in themselves should not place inmate Sharpe at risk simply because he is a sex offender and of small stature.
>
> Finally, inmate Sharpe alleges there was no move on our part to try to determine if he needed segregation from general population.
>
> Inmate Sharpe, like any other inmate, has the right to inform authorities [at any institution] that he request[s] to be isolated from population inmates for cause.  Inmate Sharpe never did that [prior to attacks by Hicks].  Only after the assault did inmate Sharpe wish to declare inmate Hicks as his enemy.  This was accomplished and inmate Sharpe was

transferred to another institution.

*Defendants' Exhibit B (Affidavit of Louis Boyd) - Court Doc. No. 16-2 at 3-5.*

With respect to the objective element of Sharpe's Eighth Amendment claim, he must show that the conditions under which he was incarcerated presented "a substantial risk of serious harm" to him, *Farmer*, 511 U.S. at 834, to which the defendants responded in an objectively unreasonable manner. *Marsh*, 268 F.3d at 1028-1029.  In addressing whether a substantial risk of serious harm exists, "[t]his objective standard 'embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency ...,"' but must be balanced against competing penological goals." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (citations omitted).  Similarly, a court must remain mindful that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990).  While "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm[,] 'occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment....'" *Purcell*, 400 F.3d at 1320 (internal citation omitted) (granting summary judgment for sheriff and jail administrator where plaintiff failed to present evidence that conditions at the jail rose to the level of a constitutional violation, despite the fact that inmates were allowed to keep money in their cells; inmates were allowed to play cards and gamble; the physical layout of the jail hindered guards from seeing into certain cells at night from the control tower; and there was a history of isolated, inmate-on-inmate fights).

22

Here, Sharpe presents no evidence that the staff shortage or overcrowding actually posed an objectively substantial risk of serious harm to him. Although Sharpe has presented evidence of isolated incidents of inmate-on-inmate violence, he fails to demonstrate that these acts resulted from overcrowding, understaffing or deficient policies.  Moreover, the evidence submitted by Sharpe falls woefully short of establishing exposure to anything "even approaching 'the constant threat of violence.'"   *Purcell*, 400 F.3d at 1321. Therefore, when viewing the evidence in a light most favorable to Sharpe, the court concludes that the conditions under which he was incarcerated failed to pose a substantial risk of serious harm so as to satisfy the objective element of his Eighth Amendment claim.

Sharpe likewise fails to advance sufficient proof that defendants Walker, Nettles, Boyd, Holt, Campbell and Riley were subjectively and deliberately indifferent to any risk of serious harm.  Sharpe has not shown these defendants were subjectively aware that a substantial risk of serious harm existed and, with such knowledge, "knowingly or recklessly" declined to take action to prevent the perceived  harm. *LaMarca*, 995 F.2d at 1535; *Marsh*, 268 F.3d at 1028 (a constitutional violation occurs only when the prison official is subjectively aware of a substantial risk of serious harm and the official fails to respond to the risk in a reasonable manner). As discussed above, Sharpe has failed to present sufficient evidence that the conditions at Bullock or any other correctional facility actually posed a substantial risk of serious harm to him.  Although it is undisputed that inmate assaults occur in the prison system, the record fails to show "that a substantial risk

of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Farmer*, 511 U.S. at 842 (internal quotation marks omitted). Even if the prison system were experiencing conditions of overcrowding and/or understaffing at the time of the assaults on Sharpe, such allegations are insufficient to establish that defendants Walker, Nettles, Boyd, Holt, Campbell and Riley knew that a substantial risk of serious harm existed and, with such knowledge, deliberately failed to prevent the harm.  The requisite element of subjective awareness on the part of defendants Walker, Nettles, Boyd, Holt, Campbell and Riley is therefore absent in this case. *Carter*, 352 F.3d at 1350.

Finally, Sharpe fails to show that actions, orders, customs, policies or breaches of statutory duty by defendants Walker, Nettles, Boyd, Holt, Campbell and Riley proximately caused the deprivation of his constitutional rights. Sharpe has likewise presented no evidence, substantially probative or otherwise, that the assaults were the proximate result of a lack of security or overcrowded conditions.  Thus, the court finds Sharpe's evidence insufficient to satisfy the causation element of his Eighth Amendment claim.

While it is unfortunate that Sharpe suffered assaults at the hands of other inmates during his incarceration, the record does not support his claim that the assaults occurred due to the deliberate indifference of defendants Walker, Nettles, Boyd, Holt, Campbell and Riley.  Sharpe presents no evidence of an objectively substantial risk of serious harm, nor is there any evidence demonstrating the defendants' subjective awareness of a substantial

risk of harm, each of which is a required element of his Eighth Amendment claim. Additionally, the evidence is insufficient to establish causation.  In light of the foregoing, defendants Walker, Nettles, Boyd, Holt, Campbell and Riley are entitled to summary judgment.  *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before June 9, 2008 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 23rd day of May, 2008.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE